## Case No. 7,180.

### JAMES v. BLAUVELT et al.

[21 Leg. Int. 172; [1] 26 Law Rep. 485.]

Circuit Court, E. D. Pennsylvania. 1864.

[1] [Reprinted from 21 Leg. Int. 172, by permission.]

Mr. Price, for complainant.
Mr. Drayton, for respondent Blauvelt.
Mr. Gilpin, U. S. Atty.

CADWALADER, District Judge. Formerly, in the case of an agreement between the owner of an unimproved suburban lot of ground and an intended purchaser, that the latter party should, within a limited time, build upon the lot a house of a certain value, and that the seller should, by instalments, at certain stages of its construction, advance, towards its cost, a part of its intended value, the course of business in this neighborhood was to postpone executing the conveyance until the house was duly finished. The gross amount receivable by the seller, including his pecuniary advances, with interest, was often secured at the same time, by a mortgage to him of the house and lot conveyed. In order to avoid inconveniences from statutory liens for work and materials, another method of carrying the purposes of the parties into effect, has been substituted. The conveyance of the lot is now made before the building is begun. The mortgage to secure the gross returns is executed at the same time. A cotemporaneous agreement, containing the mutual executory engagements, operates as a deed leading or declaring those intents and uses of the conveyance and mortgage, which do not appear on their face. The purposes to be carried into effect are, under this modern method of conveyancing, precisely the same as they were under the former method. Under these arrangements, the hazard that the purchasers would prove to have been parties of slender means and imperfect integrity, was, of course, proportional to the premiums receivable by the sellers on their pecuniary advances towards the cost of the buildings. The failure of such speculations was notoriously frequent. This made the better class of builders unwilling to engage in them without an exemption from personal responsibility for the mortgage debts. A third method of conveyancing, which is not unobjectionable, was therefore adopted in some such cases. According to this method, the unimproved lot is conveyed, in the first instance, to an irresponsible middleman, such as the defendant, Fredericks. He executes the bond and mortgage, and sometimes also, as was done here, executes, as a party, the agreement which ascertains the practical uses and purposes of the conveyance and mortgage, ostensibly as if it were intended that he should retain the proprietorship, and build the house. This done, he conveys the unimproved lot, subject to the mortgage, for a nominal consideration, to the party who has, from the first, like the complainant in this case, been the intended purchaser. With reference to certain judicial decisions in Pennsylvania, great caution is required in so penning the

deed which conveys the lot as to exclude the implication of an engagement on the part of such actual purchaser to discharge the mortgage debt.

One of the questions in this case was, whether a double stamp duty had been incurred through this duplication of what was in effect a single conveyance. The parties to such a fiction could not reasonably have complained if this had been the legal consequence. If an action at the suit of the United States had been brought, in order to test the question, I would probably have directed the case to stand over until the determination of such collateral suit. But none has been brought; and, upon reflection, I think that the double duty would not be recoverable. The conveyance from Fredericks to the complainant, separately considered, required no stamp. If, with reference to the entire transaction, the full amount of stamp duty was not paid, the whole deficiency should be assessed upon the conveyance from Jackson to Fredericks. As to this deed, the decision should be the same as it would have been if the conveyance had been a direct one from Jackson to the complainant, without the interposition of Fredericks. If every house and lot of the two hundred and forty had been worth as much as the price for which the defendant, Blauvelt, has purchased one of them, the whole value, when all the houses were finished, would have been $1,080,000. There is no necessity to inquire precisely what may be the whole actual value of all of them, as it is thus enhanced by the improvements. If the execution of the conveyance had, according to the former course of business, been postponed until after the houses were built, a question whether the stamp duty should have been assessed upon such enhanced value, or upon the consideration of the conveyance, might, perhaps, have arisen. But such a question cannot arise under the modern method, which has been adopted in this case, of conveying the lots while unimproved. A prospective, as distinguished from an existing value of the subject of a conveyance, cannot be regarded in making the assessment under the act of congress. This remark applies, without exception, to conveyances of land, of which the value is, under existing stipulations, to be enhanced by future buildings or other improvements, however unqualified the stipulations may be. But such prospective enhancement of the value of the subject of a conveyance, must not be confounded with an excess of its consideration beyond the present value of the subject. In this case, the value of the unimproved lots, when conveyed, was only $65,000. But the consideration, by whatever standard measurable, was of much greater amount. According to the import of the act of congress, the assessment of the stamp duty is to be made in respect of the consideration or value. When the present value of the subject is less than the conventional or actual amount of the

consideration, the stamp duty must be assessable on the consideration, without any reference to value. Parties may be so bound conventionally by their own language in a conveyance, that when the consideration expressed in it is greater than the actual consideration, and greater than any value of the subject, the stamp duty will, under this act, be assessable as if the actual consideration were that expressed. No such case is here in question. The dispute is, whether the amount of the consideration, as conventionally estimated by the parties, was not less than the actual amount. If thus less, the duty should have been assessed on the actual consideration, without reference to the language of the writings. The facts are undisputed. The only question is by what standard the actual consideration should have been measured. The proper measure was the same as it would have been if the conveyance had been postponed until after the houses were finished. In a case of such postponement, the consideration would not be enhanced, because the enhancement of the value of the subject, when conveyed, would be actual instead of prospective. Nor was the consideration of the conveyance, which in fact was made before the lots were improved, less in amount because the stipulated enhancement of their value was, at its date, prospective only. The conveyance, which simply executes a contract of sale or exchange, is a mere transfer of property. The consideration of other contracts, executory or executed, may be merely that which induces the consent of a party. But the consideration of sales or exchanges includes whatever else may be receivable in return for their subjects. Here consideration must not be confounded with profit. A consideration of great value may be receivable without the receipt of any profit. When, as in the present case, a seller is to get a profit, the beneficial return is compounded of the cost of the subject and of the profit. There may, however, be a gross return to him, which includes an addition to such beneficial return. This addition, though not profitable, but the reverse, may nevertheless be part of the consideration. Mr. Jackson, that he might get a profit of $127,000, conveyed these lots when worth $65,000, with a stipulation that he would advance $288,000 towards the cost of the stipulated improvements, and received, at the same time, the mortgage security for a return of the three amounts, together, $480,000. The beneficial return to him, composed of the first and second amounts only, was $192,000. The gross return was the whole $480,000. The question is, whether stamp duty is assessable on the beneficial, or on the gross return.

If the word "value" in the act of congress, could be understood as meaning value of the consideration, the assessment might properly be made upon the beneficial return alone. But the words "consideration" or "value," as used in the act, have no such import. Their

application cannot be such that the word "value" qualifies the word "consideration." The consideration is to be understood as that of the conveyance, the value as that of the subject of conveyance. The question depends, therefore, upon the unqualified import of the phrase "consideration of a conveyance." When moneys advanced, or to be advanced, by a seller, towards the cost of improving the subject of sale, are a part of the gross return, it might, at first view, seem reasonable to deduct them, as was done by the parties in this case, and estimate the consideration as the difference. But the consideration is not thus measured in conveyancing. In the language of conveyancing, the gross return is understood as the consideration. The question, without being changed in substance, may be simplified in form, by supposing that the execution of this conveyance had been postponed until after the houses were finished, and the ground rent was extinguished, the advances having, in the meantime, been made by Mr. Jackson, and that he had received, at the date of the conveyance, a single mortgage, securing the whole $480,-000. In the ordinary phraseology of such a mortgage, the land mortgaged would be described as the same which had, by deed of the same date, been conveyed to the party mortgaging it for the consideration which the mortgage secured. Such phraseology is not without legal importance. In most, if not in all, of the states of this country, there are, as in England, known distinctions between a mortgage for the consideration of a conveyance and other mortgages. Under the recording acts of Pennsylvania, mortgages of land generally have priority only from the time of recording them; but a mortgage for the purchase money of the land mortgaged, if recorded at any time within sixty days from its execution, retains its priority against other mortgages recorded in the meantime. In this, and in other respects, the mortgages to Mr. Jackson were for the purchase money of the land, or, in preciser language, for the consideration of the conveyance. They were so to their whole amount of $480,000. As to the $288,000 advanced by him, their incidents at law, and in equity, were not, in any respect, less those of mortgages for the consideration than as to the $65,000 which extinguished the ground rents, or as to the premium of $127,000, which was to be his profit. The consideration of his conveyance was therefore not less than $480,000. The stamp duty which should have been paid, was $940. Of this, $380 has been paid. The complainant, by affixing stamps of the additional value of $560, may make his title unexceptionable. When they shall have been affixed, a specific execution of the purchase will be decreed, if the complainant, acquiescing in this opinion, shall ask such a decree. I had great doubt, at first, upon the question of the amount of consideration. The doubt no longer exists. But I regret that the circuit judge was not present at the argument. After the intimation of my opinion that the $560 is due, an action to recover it will doubtless be brought at the suit of the United States, if it should remain unpaid. If the complainant prefers that the question should be decided in such an action, and the trial of it can be expedited, the present cause may stand over to await the result. If the trial of such an action cannot be sufficiently expedited, and the complainant's counsel wishes this case argued before both judges, it may stand over for a reargument.

The complainant acquiesced in the foregoing opinion, and affixed additional stamps of the value of $560 to the deed; whereupon, a specific execution of the purchase was decreed; and it was ordered that he should pay all costs.